UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,     ) | |
| )  | |
|     Plaintiff,     ) | |
| ) | |
| v.                                                   ) | Case No. CR-22-O0209-JD |
| ) | |
| JAMES "JIMMY" DYER,         ) | |
| ) | |
|     Defendant.    ) | |

### JAMES "JIMMY" DYER'S SENTENCING MEMORANDUM AND REQUEST FOR A SENTENCE OF PROBATION, OR A MIXED SENTENCE OF PROBATION WITH HOME CONFINEMENT

**COMES NOW,** the Defendant, **JAMES "JIMMY" DYER**, by and through his counsel of record, does hereby file the following sentencing memorandum as an introduction to the Court and to lay the foundation for sentence that is just, fair, and right.

### OVERVIEW

The Government and Mr. James "Jimmy" Dyer reached an agreement in a "binding plea" on a sentencing range of 0 – 18 months on the eve of jury trial. While it is below the advisory guidelines, a sentence of probation (or one of combination of probation and home confinement) meets the ends of justice. It is fair the consideration of his role, his comparative sophistication, others involved (and even more so to those never charged who actually profited), comparatively to similar cases in the Western District of Oklahoma, and most importantly, to look at James "Jimmy" Dyer as an individual, and to not be punished because of his last name.

1

Like many in "Oil States" of Oklahoma, Texas, North Dakota, etc.,[1] a large part of Oklahoma's residents seek work in the oil and gas industry. Mr. James "Jimmy" Dyer was looking for opportunity – his opportunity was as a landman. Jimmy's life has not been an easy one – and he has paid a price for his involvement in this matter that the others involved have not – and at the end of this he is waiving a significant legal issue and choosing acceptance of responsibility. Further, Jimmy is doing what is exceptional, he is attempting to make it right with Continental Resources. For the reasons set forth herein, Mr. Jimmy Dyer requests a sentence of probation, or one that includes "home incarceration." The following factors, among others discussed herein support a variance to sentence of probation:

- <u>History and Characteristics of the Defendant</u> – These are significant, but include:
    - Jimmy has strong and admirable family ties, including his role as the "family caregiver" of elderly parents (and step-parent), and even providing a place to one parent at great sacrifice.
    - Most notably, and during his pre-trial release, Jimmy brought a severely drug-addicted brother into his home to help him get (and stay) clean and help him find a job. Notably, Jimmy Dyer has a remarkable work ethic.
    - The beginning of this case, pre-dates the indictment, to which it cost Jimmy his marriage just as they were exploring having children.
    - Jimmy Dyer's health (as reflected in letters provided to the court) is in shambles with issues that include, but does not fully cover, issues that began at his own birth that required surgery, to open heart surgery in which he now has a mechanical valve in his heart, extreme anxiety that cannot be treated properly due to the heart condition, and as of recent (post-PSR interview) now must have spinal surgery.

---

[1] In 2021, approximately 71% of total U.S. crude oil production came from five states, in which the oil and gas industry has been operating for decades. *See* U.S. Energy Information Administration; *Oil and Petroleum Products Explained* https://www.eia.gov/energyexplained/oil-and-petroleum-products/where-our-oil-comes-from.php (last visted on January 8, 2024).

- <u>Exceptional Acceptance of Responsibility/Cooperation</u> – While the course of this case took time and litigation, the unusual circumstances of a federal criminal case initiating after a civil lawsuit is unheard of as it places a defendant in a situation where he cannot resolve one matter without trying to resolve the other. As the Court will discovery, Mr. Dyer resolved this at the very first opportunity and at the first (and only) plea offer the Government ever made.  Further, Mr. Jimmy Dyer is waiving a significant legal issue as to the statute of limitations (as applicable only to him) in this matter, which he has chosen acceptance. He has also demonstrated exceptional acceptance and cooperation by withdrawing any objections to "loss" calculations. This is further demonstrated through Jimmy Dyer's ongoing discussions with CLR to "make things right," to the point of foregoing rightfully earned monies owed to him as a means of demonstrating his regret. It is the hope of the undersigned that those discussions (and actions) conclude prior to sentencing so that the Court has a complete picture of the extraordinary measure Jimmy Dyer is taking.

- <u>Proportionality/Need to Avoid Disparities Among Defendants in other cases</u> – As will be presented at sentencing, the Court will be given comparisons of other defendants in other cases,[2] as well as those who were never charged – and never interviewed despite their profiting in this matter (but not having the last name of "Dyer"). As the Court will find, Mr. Jimmy Dyer did not necessarily receive any real profit in this matter.[3]

- <u>Probation as a Permitted Sentencing Option</u> – Probation is a permitted sentence by statute in reflected under 18 U.S.C. § 3563(b)(20).[4] Probation is significantly cheaper than incarceration, and recent amendments to the guidelines indicate that a non-incarcerative sentence is appropriate in these circumstances.

- <u>Objectives of Sentencing</u> – The objectives of sentencing can be best fulfilled by a non-incarcerative sentence. A felony conviction and collateral consequences, with accompanying probation, reflect the seriousness of the crime and deter others from committing the same crime.  Jimmy Dyer is extremely unlikely to recidivate and will remain a contributing member of society if given a non-incarcerative sentence.

---

[2] *See, e.g., United States v. Robert S. Kerr, IV*, CR-17-232-C (and notable his post-conviction conduct with little consequence).
[3] *See, e.g. United States v. Stuart*, 22 F.3d 76 (3d Cir. 1994) (although face value of bonds was $129,000 which determined offense level, <u>the small profit actually made might warrant a downward departure by analogy to § 2F1.1</u> which states that strict application of the loss table can overstate the seriousness of the offense).
[4] 18 U.S.C. § 3563(b)(20) lists this "as one of many discretionary conditions of probation "except that [it] may be imposed only as an alternative to incarceration." There is no statutory prohibition for such a sentence that otherwise makes sense for this individual and his particularized circumstances. It is a common sense option to "widen the net" to replace traditional prison sentences for offenders who otherwise be incarcerated.

## **INTRODUCTION**

This is a unique case. It is the kind of case that re-emphasizes that the Court itself has broad discretion in sentencing, particularly when evaluating a motion for variance and contemplating a below guideline sentence based on § 3553(a) factors. In short, Mr. Jimmy Dyer, who never finished college, was given an opportunity to serve as a contract landman for his cousin, a successful and wealthy oil and gas lawyer, and told it may open doors for him later to do work for Continental Resources. The Court will hear that Jimmy Dyer knew that the proposed plan was not one that was right, but asked the "lawyers" involved and was assured it was not illegal, but of the nature that could get one fired (or sued). As will be presented to the court, the oil and gas industry suffers from many who cheat, steal, and lie and receive great financial award. Jimmy Dyer's role in this matter is one that, while complicated, is minimal as he simply did what any landman does.[5] This business environment and those around him is what led Jimmy Dyer, to make a very poor and aberrant decision. *See* 5K2.20 (Aberrant Behavior, Policy Statement); *see also U.S. v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005) (where defendant [did] an incredibly dumb thing" and "was not the type of defendant the guidelines section was designed to punish.").

To be clear, Jimmy Dyer will state, emphatically, that this does not detract from his own responsibility as he knew it was wrong. As the Court will conclude, this venture is the greatest mistake Jimmy Dyer has ever made in his life, and the consequences go far beyond

---

[5] *See, e.g., United States v. Speenburgh*, 990 F.2d 72, 75-76 (2d Cir. 1993) (even if ineligible for minor role reduction, downward departure for minimal still proper by analogy).

that of a felony conviction or potential incarceration. They cost him a marriage, a career, a family of his own, and his own self-respect.

"A district judge may not simply rest on the authority of the Sentencing Guidelines, but must weigh all relevant § 3553(a) factors."[6] *Id.* 18 U.S.C. § 3553(a) provides that "[t]he court shall impose a sentence sufficient, *but not greater than necessary* to comply with the purposes [of sentencing]." The purposes of sentencing are found in § 3553(a)(2):

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

If, for any reason, the Court deems that probation is not an appropriate sentence, Dyer would ask the Court to sentence his to an appropriate term of home confinement.

I. **Nature and Circumstances of the Offense**

The facts and circumstances of the offense are discussed in the Pre-Sentence Report and represents the basics of what occurred. What is missing is why it occurred for Jimmy Dyer. While touched on above, testimony from Jimmy Dyer, as well as others – and character letters, will assist in placing into context who he was and is – and where he falls

---

[6] *U.S. v. Conlan,* 500 F.3d 1167, 1169 (10th Cir. 2007); *U.S. v. Arrevalo-Olvera,* 495 F.3d 1211, 1213 (10th Cir. 2007); *see also Kimbrough v. United States,* 128 S. Ct. 558, 596-597 (2007) (a district court "may not presume that the Guidelines range is reasonable."). In fact, as recognized by federal district court judge Nancy Gertner, "The Guidelines' Introduction recognized that they were not comprehensive, but rather had gaps intended to be filled in by judges' power to depart." 3 Harv. Law & Pol'y Rev. 261, 267-268 (2009).

at in this scheme. While being a landman takes a skill and knowledge, it does not prohibit the Court to consider Mr. Jimmy Dyer's more minimal role. *See Bretan v. United States*, 2006 WL 238994, 1 (S.D.N.Y.,2006) (unpub.) (Even under a pre-*Booker* analysis, it is permissible to depart "by analogy" to § 3B1.2 for otherwise minimal role).

## II. Kinds of Sentences Available

Title 18, United States Code § 3553(a)(3) requires the Court to consider the kinds of sentencing available in each case. Jimmy Dyer pled guilty to an offense which provides that a defendant shall be "shall be fined under this title or imprisoned not more than ten years, or both." Thus, offense to which Mr. Dyer has pled guilty does not have a minimum term of incarceration. The Tenth Circuit has held that this type of statutory language does not require imprisonment but instead allows broad discretion in sentencing. *See United States v. Elliot,* 971 F.2d 620, 622 (10th Cir. 1992). Thus, pursuant to the applicable statute, Mr. Dyer could be sentenced to anything from a term of probation up to 18 months under the binding plea agreement. Given the circumstances of this case, and economic factors favoring a shorter period of incarceration, as incarceration is almost eight times more expensive that supervised probation, a sentence of probation is appropriate.

## III. History and Characteristics of the Defendant

What should be considered for variance purposes for Mr. Dyer includes such factors include his health, various financial issues, family ties and responsibilities, both before and after the instance offense. Jimmy Dyer's significant health issues– as mentioned in the PSR (and above) is a significant consideration. The sentence imposed must ensure that "needed . . . medical care" is provided "in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

The Sentencing Commission now recognizes that "[p]hysical condition . . . may be relevant in determining whether a departure is warranted," and has always recognized that "in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment." USSG § 5H1.4. Above all, this conduct is an aberration in the life of Mr. Jimmy Dyer. *See* § 5K2.20, USSG.

A short period of home detention with permission to attend medical appointments is by far the most effective way to treat D's medical needs. *See United States v. Martin*, 363 F.3d 25, 49-50 (1st Cir. 2004) (upholding departure when BOP had policy of not administering the only medication successful in treating defendant's Crohn's disease); *United States v. Gee*, 226 F.3d 885, 902 (7th Cir. 2000) (finding no abuse of discretion where district court concluded BOP's letter stating its ability to handle medical conditions of all kinds was merely a form letter and that imprisonment posed a substantial risk to the defendant's life).

Home detention is particularly appropriate where a first offender is in poor health. *United States v. Coughlin*, CR-06-20005, 2008 WL 313099 (W.D. Ark. Feb. 1, 2008) ("A court that mechanically doles out precalculated sentences on a wholesale basis to categories of faceless defendants fails to do justice …. Coughlin has suffered greatly, for he had it all and squandered his success"; imposing sentence of probation with home detention and community service). *See also United States v. Rioux*, 97 F.3d 648, 663 (2d Cir. 1996) (affirming downward departure based on charitable fund-raising conduct as well as poor medical condition); *United States v. Baron*, 914 F. Supp. 660, 662-665 (D. Mass. 1995) ("It was not an abuse of discretion for the district court to conclude that, in combination,

7

Rioux's medical condition and charitable and civic good deeds warranted a downward departure."). The need for "most effective" medical care also dictates strongly in favor of a sentence other than prison.

### A. Criminal History

As noted by the Probation Office, Mr. Dyer's criminal history are two misdemeanor DUIs in the past decade-plus, in which he accepted responsibility and addressed accordingly. There is nothing about Mr. Dyer's history that demonstrates a real issue of concern.

### B. Post-Offense Conduct

Mr. Dyer has been fully compliant during his pretrial/presentence supervision, establishing that he can and will successfully follow the rules and reporting requirement while on release. He has also served as a home for his brother and helped him get a clearn and healthy life. Further, Mr. Dyer has not had any problems – no contacts with law enforcement whatsoever – during that time frame.

### C. Exceptional Acceptance of Responsibility

The Tenth Circuit has long recognized that a departure and/or variance was appropriate "for acceptance of responsibility to be so exceptional that it is 'to a degree' not considered by USSG § 3E1.1." *United States v. Gaither,* 1 F.3d 1040, 1043 (10th Cir. 1993), *citing United States v. Smith,* 930 F.2d 1450, 1454 (10th Cir.) *cert. denied,* 502 US 879, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991); *United States v. White,* 893 F.2d 276, 278 (10th Cir.1990); *see also, United States v. Garlich,* 951 F.2d 161, 164 (8th Cir. 1991); *United States v. Hairston,* 96 F.3d 102, 109 (4th Cir. 1996); *United States v. Hendrickson,*

22 F.3d 170, 176 (7th Cir. 1994). Here, Mr. Dyer provided essential information to the government in his plea, made it available to CLR, and has acted to make amends, as well as waived significant rights.

### IV. Objectives of Sentencing

The various factors set out in this Motion and Sentencing Memorandum ultimately play into the Court's determination of a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing. Such purposes are met in the circumstances of this case with a sentence of probation. Home confinement or house arrest is a substantial punishment *United States v. Bueno*, 549 F.3d 1176 (8th Cir. 2008) (where defendant possessed more than 70 kilograms of cocaine, and guidelines 108-135 months, *sentence of probation with house arrest for five years not unreasonable* given wife's life-threatening illness and dependence on defendant and "as the Court noted in *Gall*, 'Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty,'…and as the district court observed in this case, Bueno is subject to house arrest during the entire five-year period of probation."); *United States v. Munoz-Nava*, 524 F.3d 1137 (10th Cir. 2008) (in drug case where guidelines 47-56 months, district court's sentence of one year and day in prison and one year home detention reasonable in part because <u>"home confinement and supervised release substantially restrict the liberty of a defendant....The imposition of home confinement and supervised release contributes to our conclusion that Muñoz-Nava's sentence is reasonable</u>.").

9

A. **Seriousness of the Offense**

The issue then becomes what punishment is appropriate for a particular crime. In a truly retributive society, an appropriate punishment for a monetary crime would likely involve a financial penalty, a result which would be perfectly acceptable under 21 U.S.C. § 333(a) and the Sentencing Reform Act (although contrary to the sentencing guidelines). *See, e.g., United States v. Adelson,* 441 F.Supp.2d 506, 514 (S.D.N.Y. 2006) ("In the case of financial fraud, however, an important kind of retribution may be achieved through the imposition of financial burdens."). However, the sentencing guidelines attempt, by and large, to equate a period of incarceration to the crime committed. Thus, proportionality between severity of the crime and period of incarceration is a central concept to sentencing jurisprudence. 18 U.S.C. § 3553(a)(2)(A). Issues of proportionality are discussed in more detail below.

While any crime is a serious offense, there is clearly a difference between types of crimes and the means with which they were performed (as evidenced by the guidelines themselves). Similarly, any conviction of a crime, and the related sentence, even if it is simply probation, is a serious consequence. Mr. Dyer fully acknowledges that the crime he committed was serious. Given the nature of the crime and his attempts to make things right before any charge was ever levied against him, a sentence of probation, or mixed with home confinement, is wholly appropriate.

B. Deterrence

There is "considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders."[7] In addition, the prosecution itself serves as a deterrent. *See United States v. Gardellini,* 545 F.3d 1089, 1091 (D.C. Cir. 2008) (upholding sentence where, among other factors, the district court had "concluded that Gardellini had already 'suffered substantially' due to his prosecution"). A term of probation hanging over Mr. Dyer, especially with its full potential for revocation subjecting him to re-sentencing to include the full range of incarceration, can clearly act as a deterrent to Dyer and others similarly situated in the community.

C. Protect the Public

The need to protect the public from further crimes by the defendant is also a key sentencing factor. *See* 18 U.S.C. § 3553(a)(2)(C); *United States v. Shaw,* 471 F.3d 1136, 1139 (10th Cir. 2006). Mr. Dyer simply is not a threat for recidivism. Mr. Dyer knows he was wrong and that his actions caused significant harm. Simply put, Mr. Dyer is a very low risk for recidivism.

D. Treatment and Rehabilitation

Mr. Dyer, like many Americans, has struggled with financial issues. These struggles arise from unexpected life events, lack of money management skills, and the temptation to want to be more than what is expected. These money management issues which led to the

---

[7] Richard Frase, Punishment Purposes, 58 Stanford L. Rev. 67, 80 (2005); Elizabeth Szockyj, Imprisoning White Collar Criminals, 23 S. Ill. Univ. L.J. 485, 492 (1992)

temptation that brought about this offense can be best addressed while on probation rather than in the Bureau of Prisons system.

### V.     Proportionality

Proportionality is a central concept to sentencing jurisprudence. 18 U.S.C. § 3553(a)(2)(B). While any crime, particularly a felony, is a serious offense, there is clearly a difference between types of crimes and the means with which they were performed (as evidenced by the Guidelines themselves). Proportionality between severity of the crime and period of incarceration is a central concept to sentencing jurisprudence. 18 U.S.C. § 3553(a)(2)(A).  Similarly, any conviction of a crime, particularly a felony, and the related sentence, whether probation, home detention or incarceration, is a serious consequence. Additionally, the Court should seek "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

## CONCLUSION

Mr. Jimmy Dyer is truly a "one and done." For the reasons set forth herein – his health and lack of any other criminal conduct, his steady employment history and current employment, his family ties (and dedication), and responsibilities, among other factors – a minimum sentence of probation is appropriate to satisfy the objectives of sentencing. Jimmy Dyer has made a terrible mistake that he will not be able to recover the life he once had that included a marriage with a plan for children. He has learned his painful lesson that goes far beyond just a conviction (and potential of prison). Probation, as given to others in similar cases of other "landmen" sentenced in this district (and agreed to by this same U.S. Attorney's Office),[8] will allow his to make things right, remain a contributing member of society, and continue to care for his family (and hopefully restore a marriage).

Respectfully Submitted,

*s/Robert Don Gifford, II*
ROBERT DON GIFFORD, II (OBA NO. 17034)
**GIFFORD LAW, PLLC**
P.O. Box 2682
Oklahoma City, Oklahoma 73101
Telephone:   (405) 778-4647
Facsimile:   (877) 295-0287
Robert.Gifford@GiffordLawyer.com

**ATTORNEY FOR JAMES "JIMMY" DYER**

---

[8] *See, e.g., United States v. Robert S. Kerr, IV*, CR-17-232-C (and his post-conviction conduct).

## CERTIFICATE OF SERVICE

      I hereby certify that on January 25, 2024, I attempted to electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing (but could not until after midnight into January 26, 2024). Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the ECF registrants of record.

                          *s/Robert Don Gifford, II*
                          ROBERT DON GIFFORD, II